**CASE NO. 21-7352**

# IN THE

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 ℭ𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## FOR THE FOURTH CIRCUIT

———————————

LARONE F. ELIJAH,

*Plaintiff - Appellant,*

v.

BRYAN K. DOBBS, Warden,

*Defendants - Appellee,*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA AT BEAUFORT

———————————

## OPENING BRIEF OF APPELLANT

———————————

J. Scott Ballenger
Catherine E. Stetson
Holly M. Chaisson (Third Year Law Student)
Sophia E. Evans (Third Year Law Student)
Appellate Litigation Clinic
UNIVERSITY OF VIRGINIA SCHOOL OF LAW
580 Massie Road
Charlottesville, VA 22903
202-701-4925
sballenger@law.virginia.edu

*Counsel for Appellant*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF JURISDICTION ...................................................... 1

STATEMENT OF THE ISSUES ........................................................... 2

STATEMENT OF RELATED CASES ................................................... 2

INTRODUCTION ............................................................................. 2

STATEMENT OF THE CASE .............................................................. 6

    Factual Background ...................................................................... 6

    Proceedings Below ....................................................................... 7

    Proceedings On Elijah's Prior § 2255 Motion .................................. 10

SUMMARY OF ARGUMENT ............................................................. 11

ARGUMENT .................................................................................. 13

I.    ELIJAH'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION WERE SUFFICIENT TO PRESERVE DISTRICT COURT AND APPELLATE REVIEW ......... 13

II.    THE BOP MISCALCULATED ELIJAH'S RELEASE DATE BY FAILING TO GIVE HIM CREDIT FOR GOOD CONDUCT TIME FROM HIS ORIGINAL IMPRISONMENT ............................... 22

III.    THIS COURT SHOULD CONSIDER GRANTING A CERTIFICATE OF APPEALABILITY TO REVIEW THE DENIAL OF ELIJAH'S PRIOR § 2255 PETITION BECAUSE HIS REVOCATION SENTENCE EXCEEDED THE STATUTORY MAXIMUM ..................................................... 32

    A. Elijah's Maximum Revocation Sentence Was Two Years ................ 33

B.  This Court Has The Power To Reopen Elijah's Previous § 2255 Proceeding And Grant Relief On This Issue .......................................38

CONCLUSION .......................................................................................42

CERTIFICATE OF COMPLIANCE .......................................................42

# TABLE OF AUTHORITIES

## Cases

*Alphin v. Henson*,
    552 F.2d 1033 (4th Cir. 1977) ........................................................ 32

*Andrews v. Warden*,
    958 F.3d 1072 (11th Cir. 2020) ................................................. 30, 31

*Apprendi v. New Jersey*,
    530 U.S. 466 (2000) ...................................................................... 35

*Barber v. Thomas*,
    560 U.S. 474 (2010) ...................................................................... 28

*Bottinelli v. Salazar*,
    929 F.3d 1196 (9th Cir. 2019) ................................................. 22, 23

*Bradley v. Sch. Bd. of Richmond*,
    416 U.S. 696 (1974) ...................................................................... 34

*Calderon v. Thompson*,
    523 U.S. 538 (1998) ...................................................................... 41

*Camby v. Davis*,
    718 F.2d 198 (4th Cir. 1983) .......................................................... 9

*Carter v. Hendrix*,
    No. 5:18CV27, 2019 WL 138169 (N.D.W. Va. Jan. 8, 2019) ......... 30

*Diamond v. Colonial Life & Accident Ins. Co.*,
    416 F.3d 310 (4th Cir. 2005) ........................................................ 13

*DirecTV, Inc. v. Hart*,
    366 F. Supp. 2d 315 (E.D.N.C. 2004) .......................................... 15

*Dorsey v. United States*,
    567 U.S. 260 (2012) ...................................................................... 38

*Estelle v. Gamble*,
    429 U.S. 97 (1976) ........................................................................ 39

*Goney v. Clark*,
    749 F.2d 5 (3d Cir. 1984) ........................................................ 16, 21

*Howard v. Sec'y of Health & Human Servs.*,
   932 F.2d 505 (6th Cir. 1991) ............................................................... 16, 19, 20

*James v. Jacobson*,
   6 F.3d 233 (4th Cir. 1993) ...................................................................... 13-14

*Johnson v. United States*,
   529 U.S. 694 (2000) ......................................................................... 24, 25, 35

*King v. Burwell*,
   576 U.S. 473 (2015) ...................................................................................... 28

*Lockert v. Faulkner*,
   843 F.2d 1015 (7th Cir. 1988) .............................................................. 16, 20-21

*Mathews v. Weber*,
   423 U.S. 261 (1976) ........................................................................................ 1

*McNeill v. United States*,
   563 U.S. 816 (2011) .................................................................................. 36, 37

*Moreno v. Ives*,
   842 F. App'x 18 (9th Cir. 2020) .................................................................. 30

*Nichols v. Colvin*,
   100 F. Supp. 3d 487 (E.D. Va. 2015) .................................................. 10, 18, 19

*Peyton v. Rowe*,
   391 U.S. 54 (1968) .......................................................................................... 8

*Pointer-Bey v. Rios*,
   413 F. App'x 895 (7th Cir. 2011) ............................................................... 31

*Thomas v. Arn*,
   474 U.S. 140 (1985) ............................................................... 14, 15, 16, 19

*Triestman v. Federal Bureau of Prisons*,
   470 F.3d 471 (2d Cir. 2006) ........................................................................ 39

*Tyler v. Wates*,
   84 F. App'x 289 (4th Cir. 2003) ................................................................. 18

*United States v. 2121 E. 30th St.*,
   73 F.3d 1057 (10th Cir. 1996) ............................................................... 16, 20

*United States v. Chambers*,
   956 F.3d 667 (4th Cir. 2020) ................................................................ 22

*United States v. Elijah*,
   723 F. App'x 191 (4th Cir. 2018) .......................................................... 11

*United States v. Evans*,
   159 F.3d 908 (4th Cir. 1998) ................................................................ 25

*United States v. Haymond*,
   139 S. Ct. 2369 (2019) ............................................................. 8, 25, 39

*United States v. Jackson*,
   952 F.3d 492 (4th Cir. 2020) ................................................................ 27

*United States v. Ketter*,
   908 F.3d 61 (4th Cir. 2018) ............................................................. 4, 25

*United States v. McNeil*,
   415 F.3d 273 (2d Cir. 2005) ........................................................... 28, 29

*United States v. Midgette*,
   478 F.3d 616 (4th Cir. 2007) ..................................................... 16, 17, 19

*United States v. Mills*,
   No. 3:02-CR-115-J-32, 2018 WL 5310132 (M.D. Fla. Apr. 16, 2018) ........... 31

*United States v. Mulero-Algarín*,
   866 F.3d 8 (1st Cir. 2017) ..................................................................... 32

*United States v. Ortiz*,
   779 F.3d 176 (2d Cir. 2015) ................................................................. 35

*United States v. Schronce*,
   727 F.2d 91 (4th Cir. 1984) .................................................................. 13

*United States v. Smith*,
   685 F. App'x 270 (4th Cir. 2017) .......................................................... 41

*United States v. Turlington*,
   696 F.3d 425 (3d Cir. 2012) ................................................................. 35

*United States v. Under Seal*,
   856 F. App'x 476 (4th Cir. 2021) ..................................................... 2, 5, 11, 40

*United States v. Venable*,
943 F.3d 187 (4th Cir. 2019) ............................................................ 4, 8, 23, 26

*United States v. Wirsing*,
943 F.3d 175 (4th Cir. 2019) ........................................................................ 23

*United States v. Woodrup*,
86 F.3d 359 (4th Cir. 1996) ..................................................................... 25-26

*Wall v. Rasnick*,
42 F.4th 214 (4th Cir. 2022) ........................................................................ 39

*Wilson v. Andrews*,
No. 1:20cv470, 2020 WL 5891457 (E.D. Va. Oct. 5, 2020) ........................... 29

*Wold v. Fed. Bureau of Prisons*,
No. 4:18-CV-04061, 2018 WL 4906273 (D.S.D. Oct. 9, 2018) ...................... 30

## Statutes

18 U.S.C. § 921 ............................................................................................ 37
18 U.S.C. § 922 ............................................................................................ 37
18 U.S.C. § 924 ............................................................................................ 36
18 U.S.C. § 3559 .......................................................................................... 33
18 U.S.C. § 3583 ..................................................................................... *passim*
18 U.S.C. § 3584 ................................................................................ 29, 30, 31
18 U.S.C. § 3624 ..................................................................................... *passim*
21 U.S.C. § 841 .................................................................................... 6, 10, 39
28 U.S.C. § 636 .............................................................................................. 1
28 U.S.C. § 1291 ............................................................................................ 1
28 U.S.C. § 2241 .................................................................................... 1, 2, 7
28 U.S.C. § 2255 ..................................................................................... *passim*

## Other Authorities

28 C.F.R. § 2.35 ..................................................................................... 27, 28
50 Fed. Reg. 46282-03 (Nov. 7, 1985) ......................................................... 28

BOP Program Statement § 5880.28, *Sentence Computation Manual-CCCA of 1984* (1999) .................................................................................. 27

Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010) ... *passim*

Fed. R. App. P. 22 ...................................................................................... 1

First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018) ............ *passim*

*Off. of Att'y General, The First Step Act of 2018: Risk and Needs Assessment System* (July 19 2019), https://www.ojp.gov/First-Step-Act-of-2018-Risk-and-Needs-Assessment-System ...................................................................... 23

U.S.S.G. Manual, ch. 7, pt. B, intro ................................................... 31-32

## STATEMENT OF JURISDICTION

This appeal follows the district court's adoption and incorporation of the magistrate judge's report recommending that Elijah's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 be dismissed. The district court had jurisdiction to make this final determination pursuant to 28 U.S.C. §§ 636(b)(1) and 28 U.S.C. §§ 2241. *See Mathews v. Weber,* 423 U.S. 261, 270-71 (1976). This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

The district court, in granting the government's motion for summary judgement, also denied Elijah a certificate of appealability. To the extent that Elijah needs a certificate of appealability for a § 2241 appeal, his notice of appeal served as a request for one under Fed. R. App. P. 22(b)(2). Under this Court's Local Rule 22(a), this Court granted a certificate of appealability when the clerk entered a briefing order. That order does not appear to constrain the issues for briefing, *see* No. 21-7352 Doc. 14, but this Court's notice to undersigned appointed counsel identified an "issue of particular interest to the Court" as "Whether BOP miscalculated release date by failing to give credit for prior time served and good conduct time under First Step Act § 102(b)(b)(1)(A)," No. 21-7352 Doc. 12.

## STATEMENT OF THE ISSUES

The issues presented are:

(1) Whether Elijah's objections to the Magistrate's Report and Recommendation were sufficiently specific to preserve his right to review;

(2) Whether the Bureau of Prisons incorrectly denied Elijah good conduct time credit under the First Step Act for his original 108-month term of confinement; and

(3) Whether this Court should reconsider or reopen its denial of a certificate of appealability in Elijah's prior 28 U.S.C. § 2255 proceeding, Fourth Circuit No. 20-7352.

## STATEMENT OF RELATED CASES

Several related appeals involving Mr. Elijah were before the Court last year. *See United States v. Under Seal,* 856 F. App'x 476, 476 (4th Cir. 2021). To counsel's knowledge this case has not been before this Court previously and there are no other related proceedings.

## INTRODUCTION

Petitioner Larone F. Elijah filed this § 2241 habeas petition to obtain additional good conduct time credit to which he was entitled under the First Step Act, but which was not awarded by the Federal Bureau of Prisons ("BOP"). His petition presents two important issues that arise frequently in the lower courts and on which this Court's guidance is needed.

First, the district court declined to reach the merits of any of Elijah's claims because his objections to the magistrate's report and recommendation were supposedly "nonspecific." But Elijah's *pro se* filing identified his disagreements with the magistrate's recommendations, and the district court understood them full well. The court nonetheless reasoned that the magistrate's report "addressed all of Elijah's objections" and that Elijah's objections to that report were "nonspecific because Elijah is attempting to reargue his case." JA 137 n.3. That holding reflects a serious misunderstanding of the specific objection requirement. Elijah has a right to independent review of every issue by an Article III judge. Requiring specific objections to a magistrate judge's report and recommendation ensures that district courts do not have to review issues the parties no longer disagree about. But Elijah is constitutionally entitled to "reargue his case" before the district court, to whatever extent he desires.

Second, the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), amended the federal good conduct time regime to make prisoners eligible for an additional 7 days of credit per year. The statute now provides that a federal prisoner "who is serving a term of imprisonment of more than 1 year … may receive credit toward the service of the prisoner's sentence … of up to 54 days for each year of the prisoner's sentence imposed by the court." 18 U.S.C. § 3624(b)(1). Those amendments were explicitly retroactive. The district court held that Elijah was not

entitled to any additional good conduct time associated with his original sentence of incarceration because he is currently incarcerated for a violation of the terms of his supervised release and a new crime. But in a variety of contexts, including under a different provision of the First Step Act, this Court has endorsed a "unitary sentence framework" under which revocation of supervised release is treated as part of the original sentence. *See, e.g., United States v. Venable*, 943 F.3d 187 (4th Cir. 2019); *United States v. Ketter*, 908 F.3d 61 (4th Cir. 2018). There is no reason to adopt a wholly different approach to interpretation of "the prisoner's sentence" in § 3624(b)(1), and doing so would defeat Congress's intent that the First Step Act be retroactive.

The district court's decision on these issues should be reversed, and this case remanded for further proceedings.

Although the issue is not directly presented in this appeal, it also appears to appointed counsel upon reviewing the case that Elijah's three-year revocation sentence of imprisonment for violation of the terms of his supervised release exceeded the statutory maximum by a full year. 18 U.S.C. § 3583(e)(3) provides that "a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation … more than 2 years in prison if such offense is a class C or D felony." When Elijah violated his supervised release and was sentenced under § 3583(e)(3), the offense that originally had resulted in his term of supervised release

had been reclassified by the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010), from a Class B to a Class C felony.

Elijah raised this issue in a 28 U.S.C. § 2255 motion filed in the sentencing court in January 2020, and also argued that counsel was ineffective for failing to file an appeal on the issue. *See* Mem. ISO Mot. To Vacate Under 28 U.S.C. § 2255 at 24, 27, No. 4:15-cr-70-D-1 (E.D.N.C. Apr. 22, 2020), ECF No. 138 ("§ 2255 Mem.").[1] But the district court seems not to have understood Elijah's argument, and denied the motion. This Court denied a certificate of appealability, in an opinion that provides no detail about the Court's reasoning. *See United States v. Under Seal,* 856 F. App'x 476, 476 (4th Cir. 2021).

The procedural posture is certainly challenging, but this Court has inherent power to grant the certificate of appealability that it denied last year (with or without recall of any mandate that may have been issued). A sentence a full year in excess of the statutory maximum is a miscarriage of justice that warrants consideration of unusual remedies.

---

[1] The filings and orders in that proceeding are not in the record of this case, but the facts that they were filed and say what they say (as distinct from the truth or falsity of anything said therein) are appropriate subjects for judicial notice.

# STATEMENT OF THE CASE

## Factual Background

In October 2007, Elijah pled guilty to possession with intent to distribute various controlled substances, in violation of 21 U.S.C. § 841(a). JA 73. He was sentenced to a 108-month term of confinement and a 5-year term of supervised release. JA 74-75. Elijah satisfied the 108-month term of confinement in May 2014 and was released. JA 119; JA 82. Before he could complete the term of supervised release, however, Elijah was arrested by state authorities in June 2015 for new drug offenses. JA 120. Though the state charges were ultimately dismissed, Elijah was arrested by federal authorities for the same conduct the following month, in July 2015. JA 120.

Elijah pled guilty to these federal charges and was sentenced to 36 months for violating the terms of his previous supervised release and 108 months for the new offense of possession with intent to distribute, to be served consecutively. JA 120. The BOP computed Elijah's sentence "as a 144-month single, aggregate term of confinement that commenced on August 17, 2015 (the date the thirty-six-month term of confinement for the Supervised Release violation was imposed)." JA 120; *see also* JA 64 (BOP's summary judgment motion).

The relevant provisions of the First Step Act took effect in July 2019, at which point Elijah was about 47 months into his new term of confinement. JA 125. The

BOP determined that Elijah was eligible for 648 days (12 years x 54 days) of good conduct time credit. JA 198. That calculation effectively gives him full First Step Act credit for the current 144-month aggregate term, but not the extra days that retroactive application of the First Step Act to his *original* 108-month term of confinement would call for.

**Proceedings Below**

Elijah, proceeding *pro se*, petitioned for a writ of habeas corpus under 28 U.S.C. § 2241 in the District of South Carolina on August 24, 2020. JA 135. In his petition, Elijah argued, *inter alia*, that the BOP incorrectly denied him good conduct time credit under the First Step Act based on his original 108-month term of confinement.

**The magistrate judge's decision**

Following a summary judgment motion by the BOP, a magistrate judge recommended dismissal of Elijah's claims on the merits. *See* JA 119-30. Because the district court's decision rested entirely on its holding that Elijah failed to identify objections with sufficient specificity because Elijah was rearguing points presented to the magistrate, we have included the parties' briefing below in the joint appendix and will briefly summarize how the arguments developed.

Elijah's habeas petition argued that he was entitled, under the First Step Act, to a good conduct time calculation that included the original 108-month sentence of

incarceration that he had served prior to his supervised release. Elijah argued that the Supreme Court's holding in *United States v. Haymond*, 139 S. Ct. 2369 (2019), clarified that an original term of imprisonment and any supervised release or revocation term are all part of the same "criminal prosecution." JA 11. Elijah also cited precedent from the Supreme Court and this Court for the proposition that "[i]n these cases the instant offense and supervised release revocation are consecutive and thus aggregated into one unitary sentence" for purposes of 18 U.S.C. § 3624(b). JA 16 (citing *Peyton v. Rowe*, 391 U.S. 54, 67 (1968), and *United States v. Venable*, 943 F.3d 187 (4th Cir. 2019)).

The magistrate judge understood Elijah's "unitary sentence" argument, and recognized that Elijah "is correct that, in some sense, his revocation sentence is united with his original sentence." JA 127. The magistrate also acknowledged this Court's holding in *Venable* that a defendant serving a sentence for revocation of supervised release "is still serving his sentence for a 'covered offense' for purposes of the First Step Act." JA 127 (quoting *Venable*, 943 F.3d at 194). Nonetheless, the magistrate rejected Elijah's argument, relying on a string of unpublished district court opinions holding that revocation sentences are separate from the original sentence for purposes of calculating good time credits under the First Step Act. JA 127-28.

8

### Elijah's objections to the report and recommendation

Elijah, still proceeding *pro se*, filed four pages of handwritten objections to the magistrate's report and recommendation. *See* JA 131-34. Elijah reiterated his contention that "he is still serving part of the original sentence," which "is not satisfied until the aggregate 144 month continuous sentence is completed." JA 132-33. Elijah contended that any prior precedent suggesting otherwise should be reconsidered in light of *Haymond.*

### The district court's decision and appeal

The district court accepted the magistrate's report and recommendation in its entirety, but without reaching the merits. *See* JA 135-37. Instead, the district court reasoned that "[i]n the absence of specific objections to the Report and Recommendation of the magistrate judge, this court is not required to give any explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983)." JA 136. The district court concluded that Elijah's objections were "nonspecific." JA 137. On the First Step Act issue, the district court's only reasoning was that since "the Report has addressed all of Elijah's objections, the Court finds these objections to be nonspecific because Elijah is attempting to reargue his case"—citing precedent for the proposition that a "mere restatement of the arguments raised in the summary judgment filings" is insufficient to preserve an

objection for district court review. JA 137 n.3 (citing *Nichols v. Colvin*, 100 F. Supp. 3d 487, 497 (E.D. Va. 2015)).

Elijah filed a timely appeal to this Court on September 21, 2021. JA 138.

**Proceedings On Elijah's Prior § 2255 Motion**

Elijah previously filed a *pro se* § 2255 petition in the Eastern District of North Carolina on January 6, 2020. *See* Mot. to Vacate Under 28 U.S.C. § 2255, No. 4:15-cr-70-D-1 (E.D.N.C. Jan. 6, 2020), ECF No. 132 ("§ 2255 Mot."). That filing raised a variety of challenges to his conviction and sentence for the 2015 drug charges, but it also presented an argument that his "supervised release violation [sentence] of 36 months is in violation of *Apprendi*, due to the statutory penalty for supervised release was lowered" following the Fair Sentencing Act of 2010 and that "[m]y statutory maximum for the supervised release is now 24 months." *See* § 2255 Mem. at 23-24. Elijah also argued that his trial counsel was ineffective for failing to file a notice of appeal after being instructed to do so, and because she failed to file an appeal challenging Elijah's 36-month revocation sentence. As Elijah's *pro se* petition explained, his counsel had "failed to make Argument that intervening law, the Fair Sentencing Act of 2010, lowered the 100 to 1 ratio of which a lower sentence by variance could have been requested due to the new maximum was 24 months under 21 U.S.C. 841(a)(1), (b)(1)(C)." § 2255 Mem. at 27. Elijah separately argued that his appointed counsel on appeal was ineffective for failing to raise issues that were

"significantly stronger than what she raised," discussing several examples but not specifically identifying the 24-month revocation sentence issue. § 2255 Mem. at 31-33.

It is not clear that the district court understood Elijah's claim about the maximum revocation sentence, but the court held that all substantive claims that Elijah failed to raise on direct appeal were defaulted. *See* Order at 5, No. 4:15-cr-70-D-1 (E.D.N.C. Aug. 25, 2020), ECF No. 158 ("§ 2255 Dismissal Order"). The court held that "Elijah's vague claim concerning appellate counsel fails as to performance and prejudice" and that counsel "properly pressed arguments challenging the guilty plea, the motion to suppress, and Elijah's career offender designation." § 2255 Dismissal Order at 10 (citing *United States v. Elijah*, 723 F. App'x 191, 192-93 (4th Cir. 2018)). The district court denied a certificate of appealability (§ 2255 Dismissal Order at 10) and this Court did as well, stating only that the Court had "independently reviewed the record and conclude[d] that Appellant has not made the requisite showing." *Under Seal,* 856 F. App'x at 476.

## SUMMARY OF ARGUMENT

This Court should reverse the district court's holding that Elijah's objections to the magistrate's report were "nonspecific" because he was attempting to "reargue" issues fully addressed by the magistrate. Objections to a magistrate's report are not like motions for reconsideration. Elijah was fully entitled to reargue the points he

presented to the magistrate, in their entirety if he desired. The specific objections requirement exists to ensure that the district court need not review issues that are no longer in dispute—not to force litigants to come up with new arguments or abandon Article III review of magistrate recommendations.

If this Court chooses to reach the merits, it should hold that Elijah is entitled to the additional good conduct time available under the First Step Act for his entire term of imprisonment, including the original 108 months served before his supervised release. Recent decisions of this Court and the Supreme Court, from a variety of contexts, consistently treat revocation terms as part of the same "unitary sentence" with the initial term of imprisonment. There is no reason to interpret the word "sentence" in § 3624(b)(1) in a manner inconsistent with that broader jurisprudence. The line of unpublished district court decisions cited by the magistrate judge rests on older, inapposite precedent.

In addition, this Court may wish to consider reopening Elijah's prior appeal from the denial of his § 2255 motion because the district court and this Court may have overlooked or misunderstood a meritorious argument. Section 3583(e)(3) provides that the maximum sentence for revocation of supervised release is two years if the offense that resulted in the term of supervised release "is" a Class C or D felony. By the time Elijah violated his supervised release, the offense he was originally convicted of had become a Class C felony because of the Fair Sentencing

Act of 2010. Elijah did not present that argument on direct appeal but, giving his § 2255 motion the generous reading appropriate for a *pro se* filing, he argued ineffective assistance of counsel in connection with his appeal. To avoid a miscarriage of justice, this Court should consider granting the certificate of appealability it denied last year—recalling the mandate if necessary to do so.

## ARGUMENT

## I. ELIJAH'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION WERE SUFFICIENT TO PRESERVE DISTRICT COURT AND APPELLATE REVIEW

In adopting the magistrate's report and recommendation, the district court held that Elijah's objections were nonspecific and thus insufficient to preserve review in the district court or this Court. *See United States v. Schronce*, 727 F.2d 91, 94 & n.4 (4th Cir. 1984) ("Failure to file specific objections constitutes a waiver of the party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge."). This Court appears to review *de novo* whether a party made a timely and specific objection to a magistrate judge's report and recommendation. *See, e.g., Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315-16 (4th Cir. 2005) (affirming district court's conclusion without mention of deference). But even if abuse of discretion review were appropriate in some cases it would not be here, because the district court's conclusion appears to rest on a misunderstanding of the governing law. *See, e.g., James v. Jacobson*, 6

F.3d 233, 239 (4th Cir. 1993). The district court understood Elijah's objections to the magistrate judge's report and recommendation perfectly well. Indeed, the court's opinion explains Elijah's arguments clearly and in some detail. *See* JA 137 n.3. The substance of the court's holding appears to be that Elijah's objections were "nonspecific" because the magistrate judge's report "has addressed all of Elijah's objections" and "Elijah [was] attempting to reargue his case." JA 137 n.3. That holding reflects a serious misunderstanding of the specificity requirement.

In *Thomas v. Arn*, the Supreme Court upheld the Sixth Circuit's enforcement of a rule, adopted under its supervisory authority, that parties must identify their objections to a magistrate's report and recommendation upon pain of waiver. 474 U.S. 140, 146 (1985). The Court held that "sound considerations of judicial economy" supported that rule, which "prevents a litigant from 'sandbagging' the district judge by failing to object and then appealing." *Id.* at 147-48. Without such a rule, the court of appeals would be forced "to consider claims that were never reviewed by the district court," and the district court would be forced "to review every issue in every case, no matter how thorough the magistrate's analysis and even if both parties were satisfied with the magistrate's report" on that issue. *Id.* at 148. The Supreme Court explained that "Congress would not have wanted district judges to devote time to reviewing magistrate's reports except to the extent that such review is requested by the parties or otherwise necessitated by Article III of the

Constitution." *Id.* at 153. And it held that the Sixth Circuit's rule did not "elevate[]
the magistrate from an adjunct to the functional equivalent of an Article III judge"
because "[a]ny party that desires plenary consideration by the Article III judge of
any issue need only ask." *Id.* at 154. The Court concluded that "a court of appeals
may adopt a rule conditioning appeal, when taken from a district court judgment that
adopts a magistrate's recommendation, upon the filing of objections with the district
court identifying those issues on which further review is desired." *Id.* at 155.

In this case Elijah clearly identified the issues on which further review was
desired, and the district court essentially acknowledged as much. But the district
court faulted him for "attempting to reargue" issues that the magistrate's "[r]eport
has addressed." *See* JA 137 n.3. The court essentially recast the specific objections
requirement as a version of the familiar rule that motions for reconsideration cannot
simply reargue issues already decided. *Cf. DIRECTV, INC. v. Hart*, 366 F. Supp. 2d
315, 317 (E.D.N.C. 2004) ("Motions to reconsider are not proper where the motion
merely asks the court to rethink what the Court had already thought through.")
(internal quotation marks omitted).

That was error. Litigants have a right to judicial determination of each and
every issue that they want a judge to decide. Considerations of judicial economy
certainly support a rule that litigants must clearly identify what they want the judge
to decide. But any rule that litigants cannot "reargue" points presented to the

magistrate would "elevate[] the magistrate from an adjunct to the functional equivalent of an Article III judge" in a manner that cannot be squared with Article III. *Arn*, 474 U.S. at 154. The district court's decision thus violates the conditions, identified in *Arn*, that make an objection requirement constitutional.

This Court has held that "to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection," agreeing with four other circuits that had considered the issue. *United States v. Midgette,* 478 F.3d 616, 621-22 (4th Cir. 2007) (citing *United States v. 2121 E. 30th St.,* 73 F.3d 1057, 1060 (10th Cir. 1996); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505, 508-09 (6th Cir. 1991); *Lockert v. Faulkner,* 843 F.2d 1015, 1019 (7th Cir. 1988); *Goney v. Clark,* 749 F.2d 5, 6-7 (3d Cir. 1984)).

In *Midgette,* the defendant advanced two arguments in support of his motion to suppress evidence: (1) that the state "did not have 'reasonable suspicion'" he possessed "contraband" and (2) that "the search did not conform to North Carolina law, which authorized the probation officers, but not police officers, to conduct warrantless searches of probationers." 478 F.3d at 618. A magistrate judge then made proposed findings of fact and recommendations that rejected Midgette's arguments. Midgette filed objections to the report, but his objections "were based

only on his second argument" that the searches did not comport with state law. *Id.* The district court overruled those objections and denied his motion to suppress. *Id.*

Midgette's brief to this Court resuscitated the federal issue that he had omitted from his objections and added a new federal challenge to North Carolina's probation scheme. This Court held that because Midgette had "failed to present his other arguments regarding the constitutionality of the North Carolina probation law and the lack of reasonable suspicion" to the district judge in his objections, he waived his right to appeal these issues. *Id.* at 619. This Court explained that the right to appellate review "of particular issues" is waived by "failing to file timely objections specifically directed to those issues," and that "a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *Id.* at 621-22. But *Midgette* does not suggest or support any rule that litigants may not *reargue* particular points (or all points, for that matter) presented to the magistrate. To the contrary, it clarifies what *Arn* had explained: that the purpose of the objection requirement is to ensure that the district court does not have to review magistrate determinations *that both parties now agree with.* The objection rule "conserves judicial resources by training the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." *Id.* at 621.

The district court in this case relied on *Nichols v. Colvin* for the proposition that "a mere restatement of the arguments raised in summary judgment filings does not constitute an 'objection' for the purposes of district court review." 100 F. Supp. 3d 487, 497 (E.D. Va. 2015); *see* JA 137 n.3. The *Nichols* court was frustrated by the fact that Nichols simply "object[ed] to all of [the magistrate judge's] findings" and the "brief outlining" his objections was "largely a summary, and at times a direct copy, of the [memorandum in support of motion for summary judgment] he submitted to" the magistrate. *Nichols,* 100 F. Supp. 3d at 498. As a result, Nichols' objections were held by the district court to "amount to nothing more than a rehashing of the arguments raised in his Motion for Summary Judgment." *Id.* at 497. *Nichols* cited an unpublished decision of this Court for the proposition that "[a] general objection to the entirety of the magistrate judge's report is tantamount to a failure to object" at all, *id.* (quoting *Tyler v. Wates*, 84 F. App'x 289, 290 (4th Cir. 2003)), and drew the conclusion that "[l]ikewise, a mere restatement of the arguments raised in the summary judgment filings does not constitute an 'objection' for the purposes of district court review." *Id.*

With respect, forbidding litigants from restating arguments previously presented to the magistrate judge is a bridge too far. A district court can insist on a clear statement of what the litigant does, and does not, disagree with in the magistrate's report. But it cannot insist that litigants abandon issues in order to

narrow the case, on the premise that it would "negate the entire purpose of magistrate judge review" if the district court is asked to reconsider most or all of the issues in the case. *Id.* at 498. The "waste" of judicial resources that a valid objections requirement seeks to avoid is the waste associated with reviewing issues "even if both parties were satisfied with the magistrate's report" on those issues. *Arn*, 474 U.S. at 148; *see also Midgette*, 478 F.3d at 621 ("The requirement to make objections ... conserves judicial resources by training the attention of both the district court and the court of appeals upon only those issues that remain in dispute"). Plenary district court review of issues that remain in dispute is not a "waste"; it is a constitutional imperative.

The *Nichols* court also relied on the Sixth Circuit's decision in *Howard* in holding that "a mere restatement of the arguments raised in the summary judgment filings does not constitute an 'objection' for the purposes of district court review." *Nichols,* 100 F. Supp. 3d at 497 & n.4 (citing *Howard*, 932 F.2d at 509). But the objections at issue in *Howard* "clearly used paragraphs from a stock objection form" and "referred to persons and documents not involved in [the] case," including the wrong magistrate, making it virtually impossible for the district court to "know what Howard thought the magistrate had done wrong." 932 F.2d at 508. The objections consisted of a recitation of the procedural history, one sentence stating that "Plaintiff now specifically objects to the determination of the Magistrate denying Plaintiff's

request for relief," and a statement that Howard was relying on "the Brief in support of its Motion for Summary Judgment" (a motion which was never filed). *Id.* at 507-08. Because the filing at most "evince[d] an intent to object to something in the magistrate's report," the Sixth Circuit "interpret[ed] [it] as being a general objection to the entire magistrate's report." *Id.* at 508. Unsurprisingly, the court of appeals then concluded that "[a] general objection to the entirety of the magistrate's report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless." *Id.* at 509.

We agree that a mere general objection is insufficient. But there is a critical difference between holding that a litigant cannot just object *generally*, leaving the district court in the dark about what he agrees with and what he does not, and the district court's suggestion in this case that litigants are not allowed to "*reargue*" some or even all of the points that the magistrate "has addressed." JA 137 n.3.

The other circuit court cases cited in *Midgette* confirm those principles. In *United States v. 2121 E. 30th St.*, the litigant's objection "consisted of only two sentences asking that the district court reconsider the magistrate's report and recommendation" based on the briefing before the magistrate. 73 F.3d 1057, 1060 (10th Cir. 1996). In *Lockert v. Faulkner*, the prisoner did "generally object" to the magistrate's report but did not identify (for the district court *or* the magistrate) the

issue he wanted to raise on appeal. 843 F.2d 1015, 1019 (7th Cir. 1988). The Seventh Circuit sensibly concluded that "[j]ust as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review." *Id.* And in *Goney v. Clark* the prisoner's objections "were clearly general in nature" and "stated that his intent was only to appeal the Magistrate's bias." 749 F.2d 5, 6-7 (3d Cir. 1984). "There was no objection to a specific portion of the report." *Id.* at 7.

Unlike the litigants in those past cases whose objections were "general" or insufficiently specific, Elijah clearly identified his objections to the magistrate's report and supported them with arguments as to why he found the magistrate's conclusions incorrect. *See* JA 131-34. Indeed, the district court understood and accurately summarized Elijah's objections in adopting the magistrate judge's report. *See* JA 137 n.3. The district court offered no genuine *specificity* critique at all, instead remarking that Elijah's objections "reargue[d]" points already addressed by the magistrate. JA 137 n.3. That is not a proper basis for a finding of nonspecificity, and it raises serious constitutional concerns on top of that. And even that (irrelevant) critique was not fair. Elijah responded directly to the magistrate's reasoning with new points, including an argument that the revocation sentence was not separate from the original sentence because *Haymond* abrogated this Court's decision in *Ward*—a case that Elijah had never previously addressed. JA 132-33.

21

The district court thus erred in adopting the magistrate's report and recommendation without any analysis.

## II. THE BOP MISCALCULATED ELIJAH'S RELEASE DATE BY FAILING TO GIVE HIM CREDIT FOR GOOD CONDUCT TIME FROM HIS ORIGINAL IMPRISONMENT

If this Court reaches the merits of Elijah's claims, it should hold that he was entitled to received additional good conduct time credit under the First Step Act for his original 108-month term of imprisonment. The correct interpretation of the First Step Act is a question of law, reviewed *de novo. See, e.g., United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020).

The First Step Act "implemented a number of prison and sentencing reforms" designed to reduce the sentences of certain defendants. *Bottinelli v. Salazar*, 929 F.3d 1196, 1197 (9th Cir. 2019). Amending sections of the Fair Sentencing Act of 2010, the First Step Act increased the number of good conduct time credits a defendant could receive by altering the manner in which the BOP calculates them. First Step Act § 102(b)(1)(A). The practical result was to increase the number of good conduct time credits an inmate could receive by seven days annually—from 47 to 54. *See Bottinelli*, 929 F.3d at 1197.

Section 102(b)(1)(A) applies retroactively "to offenses committed before, on, or after the date of enactment of this Act except that such amendments shall not apply with respect to offenses committed before November 1, 1987." The

amendments were to take effect when the Attorney General completed and released a risk and needs assessment, § 102(b)(3), which occurred on July 19, 2019.[2] This Court has already recognized that "the very purpose of the First Step Act is to make the Fair Sentencing Act retroactive," and has rejected district court rulings that would narrow its application to a limited subset of defendants. *United States v. Wirsing*, 943 F.3d 175, 184 (4th Cir. 2019); *see also Venable*, 943 F.3d at 193-94.

The First Step Act clearly entitles inmates to have their good conduct time credits recalculated retroactively using the new formula, so that they gain an extra seven days for each year of their sentence. *See Bottinelli*, 929 F.3d at 1202. But it is an open question in this Court whether prisoners serving *revocation* sentences are entitled to additional credits for time served on the original sentence before their supervised release. The governing (and retroactive) language of 18 U.S.C. § 3624(b)(1) provides that "a prisoner who is serving a term of imprisonment of more than 1 year, other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, of up to 54 days for each year of the prisoner's sentence imposed by the court." The critical interpretive question for prisoners serving revocation terms, therefore, is whether the word "sentence" embraces both the revocation sentence and the original sentence as

---

[2] *See* Off. of Att'y General, *The First Step Act of 2018: Risk and Needs Assessment System* (July 19, 2019), https://www.ojp.gov/First-Step-Act-of-2018-Risk-and-Needs-Assessment-System.

a unitary whole—or whether instead the revocation sentence is a discrete event, such that for revocation term prisoners, the relevant "sentence imposed by the court" does not include the original term of imprisonment.

The better answer is that the "sentence" referred to in § 3624(b)(1) embraces the original term of imprisonment and any revocation term, for several reasons.

First, Supreme Court precedent makes clear that terms of confinement, supervised release, and revocation terms comprise a unitary punishment for the original crime as a matter of fundamental constitutional principle. As the Supreme Court explained in *Johnson v. United States*, "serious constitutional questions would be raised by construing revocation and reimprisonment as punishment for the violation of the conditions of supervised release," as opposed to punishment for the original crime. 529 U.S. 694, 700 (2000). For example, "[w]here the acts of violation are criminal in their own right, they may be the basis for separate prosecution, which would raise an issue of double jeopardy if the revocation of Supervised Release were also punishment for the same [new] offense." *Id.* "Treating postrevocation sanctions as part of the penalty for the initial offense, however (as most courts have done), avoids these difficulties." *Id.* For that reason, the Court held that the *Ex Post Facto* Clause would bar unfavorable changes to the law governing revocation sentences after the defendant's original offense. *Id.* at 701.

A plurality of the Court reaffirmed these principles just a few years ago in *Haymond*, explaining that "[t]he defendant receives a term of supervised release thanks to his initial offense, and whether that release is later revoked or sustained, it constitutes a part of the final sentence for his crime." 139 S. Ct. at 2380. The *Haymond* plurality also explained that it was not "say[ing] anything new," *id*. at 2379-80: "This Court has already recognized that supervised release punishments arise from and are 'treat[ed] ... as part of the penalty for the initial offense.'" *Id.* at 2380 (quoting *Johnson*, 529 U.S. at 700).

Second, this Court recently adopted a "unitary sentence" framework for analyzing mootness questions in *United States v. Ketter*, 908 F.3d 61, 65 (4th Cir. 2018). *Ketter* considered whether a prisoner's habeas challenge to his original sentence is mooted when he is on supervised release and no longer in prison. This Court held that "[t]reating custodial and supervised release terms as components of one unified sentence appropriately recognizes the interdependent relationship between incarceration and Supervised Release." *Id.* This Court also recognized that the logic underpinning this framework has been integrated into this Circuit's opinions for decades. *See id.* (citing *United States v. Evans*, 159 F.3d 908, 913 (4th Cir. 1998) ("[T]he term of supervised release, the revocation of that term, and any additional term of imprisonment imposed for violating the terms of supervised release are all part of the original sentence") and *United States v. Woodrup*, 86 F.3d

359, 361 (4th Cir. 1996) ("The sentence imposed upon revocation of a term of supervised release is an authorized part of the original sentence, just as the term of supervised release is an authorized part of the original sentence[.]")).

Third, these same principles led this Court to reverse the district court's interpretation of the First Step Act in *Venable*. The defendant in *Venable*, just like Elijah, had completed his original term of imprisonment and was in custody following the revocation of his supervised release. The question was whether he could seek adjustment of his original term of imprisonment and/or supervised release under a different provision of the First Step Act authorizing retroactive modifications of sentences for certain "covered offense[s]." 943 F.3d at 190. The government initially contended "that revocation sentences are separate offenses" for purposes of the First Step Act but abandoned that position prior to argument. *Id.* at 191. This Court held that "the Government was correct" to abandon its original position, and that the district court's power to modify original terms of imprisonment under the First Step Act—even when the petitioner is serving a later revocation sentence—"flows directly from the plain language of the relevant statutes and the unitary theory of sentencing." *Id.* at 193. Applying a "unitary sentence framework" derived from *Johnson* and *Ketter*, this Court emphasized that because the inmate's "revocation sentence is part of the penalty for his initial offense, he is still serving his sentence for a 'covered offense' for purposes of the First Step Act." *Id*. at 194.

There is no sound justification for giving a different, and wholly inconsistent, construction to the word "sentence" in a different provision of the same statute.

Fourth, this Court recently recognized in *United States v. Jackson* that when a defendant has over-served his original term of imprisonment because a portion of that sentence is vacated after being served, the defendant generally is entitled to a credit for that excess prison time against any subsequent revocation term imposed "under the same sentence." 952 F.3d 492, 498 (4th Cir. 2020) (citing BOP Program Statement § 5880.28, *Sentence Computation Manual-CCCA of 1984* (1999) at 1-69). Even the BOP recognizes that the initial term and the revocation term should be treated as a unitary whole when a defendant over-served the initial term because a portion of it was later vacated. There is no justification for a different rule when the same defendant over-served the initial term because he later became entitled to additional good conduct time.

The U.S. Parole Commission has promulgated a regulation purporting to impose a different interpretation. 28 C.F.R. § 2.35(b) asserts that:

> It is the Commission's interpretation of the statutory scheme for parole and good time that the only function of good time credits is to determine the point in a prisoner's sentence when, in the absence of parole, the prisoner is to be conditionally released on supervision, as described in subsection (a). Once an offender is conditionally released from imprisonment, either by parole or mandatory release, the good time earned during that period of imprisonment is of no further effect either to shorten the period of supervision or to shorten the period of imprisonment which the offender may be required to serve for violation of parole or mandatory release.

The Parole Commission does not administer the First Step Act in any meaningful sense, disentitling it from any deference to its interpretation. *See King v. Burwell,* 576 U.S. 473 (2015). But even if the Parole Commission were theoretically entitled to deference, it deserves none for this interpretation. The language quoted above from 28 C.F.R. § 2.35(b) was added to the regulation in 1985. *See* 50 Fed. Reg. 46282-03 (Nov. 7, 1985), *available at* 1985 WL 187468. It cannot speak to a statute that was passed 33 years later, and which was explicitly intended to *overrule* the way the BOP had been interpreting and implementing the good conduct time regime.[3]

The magistrate judge referenced a series of unpublished district court decisions rejecting the interpretation advanced here, or interpretations like it. *See* JA 127-28 (citing unpublished cases). Those decisions are not persuasive. Generally, they cite 28 C.F.R. § 2.35 and invoke the Second Circuit's decision in *United States v. McNeil* for the proposition that "the imprisonment that ensues from revocation is partly based on new conduct, is wholly derived from a different source, and has different objectives altogether; it is therefore a different beast." 415 F.3d 273, 277 (2d Cir. 2005). But *McNeil* predates both the First Step Act and this Court's "unitary sentence" decisions in *Venable* and *Ketter*. It addressed only the constitutional

---

[3] This amendment under the First Step Act occurred after the Supreme Court upheld the BOP's method of awarding good conduct time credit on the basis of the number of days actually served and not the length of the sentence imposed. *See Barber v. Thomas*, 560 U.S. 474, 478-83 (2010).

question, considered by this Court in *Ward*, of whether a jury is required for findings essential to revocation of supervised release. *Id.* at 276-77.

The most substantive of the unpublished district court decisions is probably *Wilson v. Andrews*, which attempts to distinguish the First Step Act provisions at issue here from the one considered by this Court in *Venable.* No. 1:20cv470, 2020 WL 5891457, *4-7 (E.D. Va. Oct. 5, 2020). But the distinctions offered relate to policy considerations, not the statutory language, and do not explain why this Court should make a unique exception to its standard "unitary sentencing framework" for § 404 of the First Step Act when nothing particularly unique to § 102 of the Act drove this Court's reasoning in *Venable.*

Elijah received a 36-month revocation sentence, and by the time the First Step Act took effect (on July 19, 2019) he had been imprisoned for over 47 months. JA 70. But that timing makes no difference. Calculation of good conduct time credit is an administrative function, and for administrative purposes Elijah's current sentences have been aggregated into a single term of imprisonment: "[A]n inmate serving a 144-month (12-year) term is eligible to receive a maximum of 648 (12 x 54) days of GCT credit." JA 68. There are no distinctions between the sentences that make up that aggregate term of imprisonment for BOP administrative purposes.

Under 18 U.S.C. § 3584(c), "Multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single,

aggregate term of imprisonment." Thus, the BOP *must* aggregate sentences, and it must do so for all administrative purposes. *See Moreno v. Ives*, 842 F. App'x 18, 21-22 (9th Cir. 2020) ("[O]ther courts have recognized that [§ 3584(c)] applies to all administrative determinations made by BOP."). After aggregation, the order or length of consecutive sentences is irrelevant; only a single term of imprisonment exists. In the Eleventh Circuit's words, "the Bureau treats multiple sentences as if all are being served simultaneously for administrative purposes." *Andrews v. Warden*, 958 F.3d 1072, 1079 (11th Cir. 2020).

Several examples demonstrate how this works:

Even if a prisoner has technically finished serving time for an offense, it is still "current" for purposes of supervised release if the aggregate sentence is ongoing. *See Carter v. Hendrix*, No. 5:18CV27, 2019 WL 138169, at *4-5 (N.D. W. Va. Jan. 8, 2019) (finding prisoner ineligible for early release because aggregate sentence included violation of supervised release for a previous offense, even though that sentence had long since been completed); *Wold v. Fed. Bureau of Prisons*, No. 4:18-CV-04061, 2018 WL 4906273, at *9 (D.S.D. Oct. 9, 2018) (finding defendant ineligible for supervised release based on a 15-month revoked sentence for a drug crime involving a dangerous weapon, even though four years had passed). "Once aggregated, both sentences are [the prisoner's] 'current' sentence." *Wold*, 2018 WL 4906273, at *9.

The BOP has applied the same, standard reasoning to sentence commutation. In *Andrews*, President Obama commuted the sentence that a prisoner was "now serving." 958 F.3d at 1078. Even though the prisoner was serving the second of two consecutive sentences, the BOP read the presidential order to apply to both sentences. *Id.* at 1078-79. The BOP's decision was informed by its "longstanding policies and statutes," including § 3584(c), even though the plain text of the presidential order might suggest a different conclusion. *Id.*

Calculating good conduct time is clearly an administrative purpose, and the BOP does aggregate sentences for purposes of applying good conduct time. *See Pointer-Bey v. Rios*, 413 F. App'x 895, 896 (7th Cir. 2011) (BOP aggregated sentences for calculating good conduct time); *United States v. Mills*, No. 3:02-CR-115-J-32, 2018 WL 5310132, at *2 (M.D. Fla. Apr. 16, 2018) ("[T]he computation of an inmate's good conduct time is also an 'administrative purpose' governed by § 3584(c).") (citing *Pointer-Bey*, 413 F. App'x at 896). For purposes of good conduct time, then, all the offenses covered by the aggregate term of imprisonment are current offenses until the term of imprisonment is over.

The statute's policy of administrative aggregation makes practical sense, especially when applied to good conduct time. To begin with, the sequence of consecutive sentences is arbitrary. The Sentencing Commission actually prefers that revocation sentences follow any new sentence for the same misconduct, *see* U.S.

31

Sentencing Commission, Guidelines Manual, ch. 7, pt. B, intro, and that ordering is common, *see, e.g., United States v. Mulero-Algarin*, 866 F.3d 8, 10-11 (1st Cir. 2017) (revocation proceedings postponed until after defendant was sentenced for new offense). The ordering of sentences also is not relevant to the administration of good conduct time credits. A prisoner should not earn more or fewer credits because of how sentences are arranged.

To review:  The First Step Act applies to Elijah's original sentence. For purposes of § 3624(b)(1), the original sentence and the revoked sentence make up a unitary whole, such that credits from the original sentence apply to the revocation sentence. And Elijah's revocation sentence has been aggregated into an ongoing term of imprisonment. Therefore, good conduct time credits from the original sentence can and should be applied to Elijah's current term of imprisonment.

## III. THIS COURT SHOULD CONSIDER GRANTING A CERTIFICATE OF APPEALABILITY TO REVIEW THE DENIAL OF ELIJAH'S PRIOR § 2255 PETITION BECAUSE HIS REVOCATION SENTENCE EXCEEDED THE STATUTORY MAXIMUM

Elijah's three-year revocation sentence exceeded the statutory maximum by a full year. Although the issue is not presented in this proceeding, the interests of justice support reopening Elijah's previous § 2255 petition, which raised this claim. The proper interpretation of § 3583(e)(3) is a question of law reviewed *de novo*. Whether to grant relief in the nature of reopening the mandate is committed to this Court's discretion. *Alphin v. Henson,* 552 F.2d 1033, 1035 (4th Cir. 1977).

32

### A.    Elijah's Maximum Revocation Sentence Was Two Years

A defendant whose supervised release is revoked may be returned to prison for all or part of the original supervised release term, "without credit for time previously served on postrelease supervision." 18 U.S.C. § 3583(e)(3). But he "may not be required to serve on any such revocation" more than two years in prison "if the offense that resulted in the term of supervised release . . . *is* a class C or D felony." *Id.* (emphasis added).

The "offense that resulted in [Elijah's] term of supervised release" was distribution of 8 grams of cocaine base. At the time of Elijah's original sentencing, that was a Class B felony. *See* 18 U.S.C. § 3559 (classifying offenses); Motion for Sentence Reduction at 1, No. 7:07-cr-10-1-D (E.D.N.C. Nov. 19, 2008), ECF No. 36. But after the Fair Sentencing Act of 2010 raised the quantity of drugs required for Class B felony punishment to 28 grams, Pub. L. No. 111-220, 124 Stat. 2372, 2372 (2010), Elijah's offense *is* now a Class C felony. The Fair Sentencing Act of 2010 was not (until the First Step Act was passed) retroactive, so Elijah could not seek a reduction in his *original* sentence. But when Elijah was sentenced in 2015 to a revocation term of imprisonment for violating his supervised release, the Fair Sentencing Act of 2010 was the operative law. And under that operative law, two years was the maximum revocation sentence for an offense that "*is* a Class C felony."

33

Elijah received a revocation sentence of three years instead, as the sentencing judge issued him the statutory maximum penalty for a class B felony. JA 89. By doing so, the judge failed to apply the law in effect at the time of Elijah's revocation sentence and rendered judgment contrary to the plain language of § 3583(e)(3).

If Congress had wanted to key statutory maximum sentences for a violation of supervised release to what class of felony the original offense "*was*" at the time of the original sentencing, Congress could have said that. But that would have been a highly unusual statutory regime. The ordinary presumption in the law is that "a court is to apply the law in effect at the time it renders its decision." *Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 711 (1974). Legal regimes requiring the court to apply *past* law are not unheard of (the *Ex Post Facto Clause* requires it when the criminal law has changed in a manner adverse to defendants, for example) but they require special justification. And if Congress had wanted courts to look back to the state of the law on some prior date, it would have had to specify a date. Did Congress mean when the offense was committed? Or when the original sentence was imposed? The fact that § 3583(e)(3) provides no answer to that ambiguity indicates that Congress expected courts to do what they usually do: apply the law as it "is," at the time of decision. And if there were any doubt about that, it should be resolved by the rule of lenity.

Other circuits appear to have held that the statutory maximum is determined by reference to the law in effect at the time of the original offense. *See e.g.*, *United States v. Ortiz*, 779 F.3d 176 (2d Cir. 2015); *United States v. Turlington*, 696 F.3d 425 (3d Cir. 2012) (same). But both courts overlook the plain language of the text of § 3583(e)(3) by effectively replacing the word "is" with "was."

These courts are correct that "imposition of a new sentence for violating the terms of one's supervised release is part and parcel of the first offense for which the defendant was convicted." *Turlington*, 696 F.3d at 427 (citing *Johnson*, 529 U.S. at 701). However, section 3583(e)(3) does not command that courts should apply old law in determining the statutory maximum of a defendant's revocation sentence. To the contrary, its use of the present tense suggests that courts should look to the law currently in effect. A revocation sentence is "part and parcel" of the original offense under *Johnson* only in the sense that the punishment is constitutionally authorized, for purposes of the *Ex Post Facto* Clause and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), by the original offense rather than by the new misconduct. That constitutional point does not support giving a statute meant to limit criminal punishment a past-tense interpretation when the plain language uses the present tense.

The Third Circuit also relied on the Supreme Court's holding that Congress's "[u]se of the present tense" "is" in the Armed Career Criminal Act's definition of a

serious drug offense did not require a federal court to look at the present condition of state law. *McNeill v. United States*, 563 U.S. 816, 820 (2011); *see* 18 U.S.C. § 924(e)(2)(A)(ii) (defining a serious drug offense as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance …, for which a maximum term of imprisonment of ten years or more is prescribed by law."). The Supreme Court did reason that the ACCA "is concerned with convictions that have already occurred," *McNeill,* 563 U.S. at 820, which is true of § 3583(e)(3) as well. But the Court's primary point was that because whether the offense involved the manufacture or distribution of controlled substances "can only be answered by reference to the law under which the defendant was convicted," the "maximum sentence that 'is prescribed by law' for that offense must also be determined according to the law applicable at that time." *Id.* The Court also emphasized the surrounding context of the ACCA's force clause, which defines as a "violent felony" any crime that "has as an element" the use or threat of force, that "is" burglary, arson, or extortion, or that "involves" use of explosives or a serious risk of potential injury. *Id.* at 821. The Court had always looked to the elements of the crime at the time of the defendant's conviction when applying that provision and concluded that "we see no reason to interpret 'serious drug offense[s]' in the adjacent section of the same statute any differently." *Id.* at 821-22.

The Court also stressed that in the context of the ACCA "consulting current state law to define a previous offense" would produce "absurd results," because a state's reformulation of its criminal code could cause a prior conviction to "'disappear' entirely for ACCA purposes." *Id.* at 822-23. Congress could not have intended that result when it specifically provided that prior convictions would remain ACCA predicates unless they are "expunged, or set aside or [the] person has been pardoned or has had civil rights restored." *Id.* at 823 (quoting 18 U.S.C. § 921(a)(20)). And the Court thought it made no sense for the ACCA's applicability to "depend on the timing of the federal sentencing proceeding," noting that a backward-looking interpretation "permits a defendant to know even before he violates § 922(g) whether ACCA would apply." *Id.* at 823.

A plain language interpretation of § 3583(e)(3) does not present any of those ACCA-specific interpretive difficulties. No other characterization of the "offense that resulted in the term of supervised release" in § 3583(e)(3) logically requires the Court to look back in time to a prior version of the law. No other provisions in § 3583(e) have been previously interpreted to require a backward-looking construction. And there would be nothing "absurd" about tying a defendant's maximum revocation sentence to the present-law felony classification of their offense. The practical effect of doing so here would just be to apply Congress's statutory change of heart about drug offense classification (and the crack-powder

cocaine disparity specifically) prospectively to defendants who violate the terms of their supervised release. That outcome is eminently reasonable; after all, Congress explicitly made those changes retroactive in passing the First Step Act, and permitted defendants to seek modification of their original sentences.

Indeed, the Supreme Court has already recognized in a different context that sentencing under the Fair Sentencing Act should proceed under the law as it exists at the time of sentencing, not as it existed when the offense was committed. In *Dorsey v. United States*, the Court confirmed that "the Act's more lenient penalty provisions apply to offenders who committed a crack cocaine crime before [the Act's effective date], but were not sentenced until after." 567 U.S. 260, 264 (2012). The Court observed that "applying the … old mandatory minimums to the post-August 3 sentencing of pre-August 3 offenders would create disparities of a kind that Congress enacted … the Fair Sentencing Act to prevent." *Id.* at 276. This case presents a similar issue. The "ordinary practice" of "apply[ing] new penalties to defendants not yet sentenced" better aligns with the purposes of the Fair Sentencing Act, as well as its plain language. *Id*. at 280.

### B.    This Court Has The Power To Reopen Elijah's Previous § 2255 Proceeding And Grant Relief On This Issue

Elijah filed a *pro se* petition under 28 U.S.C. § 2255 in the Eastern District of North Carolina on January 6, 2020. § 2255 Mot. In his memorandum, Elijah stated

affirmatively that "[m]y statutory maximum for the supervised release is now 24 months." § 2255 Mem. at 24.

Elijah's *pro se* § 2255 petition was not a model of clarity. His initial argument with respect to his revocation sentence was embedded within an argument discussing the Fifth and Sixth Amendment implications of *United States v. Haymond*, 139 S. Ct. 2369 (2019). But he did specifically identify that the statutory maximum should have been 24 months. § 2255 Mem. at 23-24. And later in the same filing Elijah argued that he received ineffective assistance of counsel because his trial attorney had "failed to file a notice of appeal" on the issue "that an intervening change of law, the Fair Sentencing Act – 2010 lowered the 100 to 1 ration of which a lower sentence by variance could have been requested due to the new maximum was 24 months under 21 U.S.C. 841(a)(1), (b)(1)(C)." § 2255 Mem. at 27-28.

This Court construes *pro se* filings liberally, *see Wall v. Rasnick,* 42 F.4th 214, 217 (4th Cir. 2022), "interpret[ing]" them to "raise the strongest arguments that [the filings] suggest," *Triestman v. Federal Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006); *see also Estelle v. Gamble,* 429 U.S. 97, 106 (1976) ("The handwritten pro se document is to be liberally construed…a pro se [submission], 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'"). Under that liberal construction, Elijah raised the 24-month sentencing issue—indeed, he raised it more than once.

The district court's order denying Elijah's § 2255 petition did not directly address this issue. § 2255 Dismissal Order at 3. The court *did* note that the revocation sentence was 36 months. § 2255 Dismissal Order at 3 n.2. but did not engage on the merits of Elijah's argument that it exceeded the statutory maximum. Instead, the court held that Elijah had forfeited all claims not raised on direct appeal, and that appellate counsel was not ineffective because she had "properly pressed arguments challenging the guilty plea, the motion to suppress, and Elijah's career offender designation." *See* § 2255 Dismissal Order at 5, 10. After having "independently reviewed the record," this Court denied a certificate of appealability without further explanation. *Under Seal,* 856 F. App'x at 476. We respectfully submit that both the district court and this Court may have overlooked this meritorious claim in Elijah's *pro se* filings.[4] Giving his petition and supporting memorandum in the district court an appropriately generous reading, he fairly raised both a claim that the statutory maximum was exceeded and that counsel was ineffective in failing to present that issue to the district court and on direct appeal.

The procedural posture here is challenging. However, appointed counsel submits that this Court has the power to grant the certificate of appealability it previously denied on Elijah's § 2255 petition, consolidate that case with this one,

---

[4] Undersigned counsel cannot review Mr. Elijah's filings in this Court, because they are under seal.

and grant him relief. It is not clear that this Court's mandate in that consolidated proceeding embraced these issues. Since a certificate of appealability was denied, Elijah was not permitted to take an appeal at all. And counsel is unaware of any time limit constraining this Court's discretion to grant a certificate of appealability.

To the extent this Court did issue a mandate, it has the "inherent power to recall" its mandates in "extraordinary circumstances to avoid injustice." *United States v. Smith,* 685 F. App'x 270 (4th Cir. 2017) (mem.) (citing *Calderon v. Thompson,* 523 U.S. 538, 549-50) (1998)). In *Calderon,* for example, the Supreme Court held that an order recalling the mandate in a habeas case is not an improper end-run around AEDPA's bar against second-or-successive petitions, so long as the court of appeals considers only the issues originally presented. *Calderon,* 523 U.S. at 554. The Court articulated a "general rule" that where a court of appeals recalls its mandate to "revisit the merits of an earlier decision denying habeas corpus relief to a state prisoner" it abuses its discretion unless the case presents a "miscarriage of justice" involving "actual innocence." *Id.* at 558. But that holding was grounded in the strong federalism and finality considerations that constrain federal courts from granting habeas relief to state prisoners—there, to a death row inmate on the verge of execution. There are no comparable countervailing interests at stake here. Mr. Elijah is a federal prisoner who simply seeks correction of an unlawful federal sentence that he is effectively still serving.

The circumstances present here are quite unique. Mr. Elijah is serving a revocation sentence in excess of the statutory maximum, which is a clear miscarriage of justice. The issues were appropriately presented last year, and not clearly addressed. And this Court fortuitously has another case before it involving the same prisoner. This constellation of circumstances is unlikely to recur often, and merits consideration of unusual remedies.

## CONCLUSION

This Court should reverse the opinion of the District Court and remand for further proceedings. It should also consider reopening Elijah's prior § 2255 case.

Respectfully submitted,

*/s/ J. Scott Ballenger*
J. Scott Ballenger
Catherine E. Stetson
Holly M. Chaisson (Third Year Law Student)
Sophia E. Evans (Third Year Law Student)
UNIVERSITY OF VIRGINIA
SCHOOL OF LAW
Appellate Litigation Clinic
580 Massie Road
Charlottesville, VA 22903-1789
(202) 701-4925
sballenger@virginia.edu

*Counsel for Larone Elijah*

42

## CERTIFICATE OF COMPLIANCE

I.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 10,223 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

II. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word, in 14-point Times New Roman.


November 16, 2022                          */s/ J. Scott Ballenger*
                                           J. Scott Ballenger
                                           *Counsel for Appellant*